# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SERVPRO INDUSTRIES, INC., ) | |
| ) | |
|     Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| v. ) | NO. 3:17-cv-01433 |
| ) | |
| TAMMY WOLOSKI, PAUL ) | JUDGE CAMPBELL |
| WOLOSKI, and DELTA DAWGS ) | MAGISTRATE JUDGE HOLMES |
| CONSTRUCTION CORP. d/b/a ) | |
| SERVPRO OF ROSEMEAD/SOUTH ) | |
| EL MONTE, ) | |
| ) | |
|     Defendants/Counterclaim Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| RICHARD CONNOR, ) | |
| ) | |
|     Counterclaim Defendant. ) | |

## MEMORANDUM

### I. Introduction

Pending before the Court are a Partial Motion to Dismiss Counterclaims (Doc. No. 86), filed by Counterclaim Defendants Servpro Industries, Inc. and Richard Connor (hereinafter "Servpro"); an Opposition brief (Doc. No. 90), filed by Counterclaim Plaintiffs Tammy Woloski, Paul Woloski, and Delta Dawgs Construction Corporation (hereinafter "Delta Dawgs"); and Servpro's Reply (Doc. No. 96). For the reasons set forth below, the Partial Motion to Dismiss Counterclaims (Doc. No. 86) is **GRANTED,** in part, and **DENIED,** in part. Accordingly, Delta Dawgs' first, fourth, fifth, and seventh counterclaims are dismissed. The second counterclaim was dismissed by previous Order (Doc. No. 99). The third and sixth counterclaims remain pending.

## II. Factual and Procedural Background

Servpro Industries, Inc., a franchisor of cleaning and damage restoration services, initially brought this action against Tammy Woloski, Paul Woloski, and Delta Dawgs Construction Company d/b/a Servpro of Rosemead/South El Monte, alleged to be a former franchisee, for federal statutory trademark infringement; federal common law trademark infringement and unfair competition; and breach of contract as to the Franchise License Agreement ("Franchise Agreement"), a Guaranty, and a Secured Promissory Note. (Doc. No. 1). In turn, Delta Dawgs' latest pleading brings the following counterclaims: violations of the California Franchise Relations Act ("CFRA"); a class action claim for violations of the California Business & Professions Code Section 17200; breach of contract; breach of the implied covenant of good faith and fair dealing; violations of the California Penal Code Section 496; violations of 42 U.S.C. § 1981; and violations of California Civil Code Section 51.8. (Doc. No. 83). Through the pending Motion, Servpro seeks to dismiss all the counterclaims except the one alleging breach of contract.

## III. Analysis

Through the first counterclaim, Delta Dawgs seeks to enforce CFRA Sections 20020 (Grounds for Termination), 20035 (Termination or Failure to Renew), and 20040.5 (Venue) against Servpro. Servpro argues this counterclaim should be dismissed because the parties agreed to a Tennessee choice-of-law provision in their agreements, and there is no prevailing California public policy that overrides the agreements.

The choice-of-law provision, in Section 13.10 of the Franchise Agreement, states:

> 13.10 <u>Governing Law.</u>  This Agreement, the rights granted and the relationship created hereunder shall be governed, interpreted and construed in all respects in accordance with the internal laws of the State of Tennessee without regard to its

conflicts of laws provisions, except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. § 1051 et seq.)

(Doc. No. 1-1, at 37).

The "Addendum to the Franchise License Agreement for the State of California" provides in Paragraph 6:

> 6. Section 13.10, Governing Law, is amended by adding: The Agreement requires application of the law of the State of Tennessee. This provision may not be enforceable under California law.

(Doc. No. 1-1, at 43).

A federal court sitting in diversity must apply the forum state's choice-of-law rules to determine which state's laws govern the dispute. *See, e.g., Town of Smyrna, Tenn. v. Municipal Gas Auth. of Ga.,* 723 F.3d 640, 645 (6th Cir. 2013).[1] Under Tennessee law, a contract is presumed to be governed by the law of the jurisdiction in which it was executed, absent a contrary intent. *Id.* If the parties contracted to be governed by the law of a specific jurisdiction, however, Tennessee will honor that choice if the following requirements are met:

> The choice of law provision must be executed in good faith. *Goodwin Bros. Leasing, Inc. v. H & B Inc.,* 597 S.W.2d 303, 306 (Tenn.1980). The jurisdiction whose law is chosen must bear a material connection to the transaction. *Id.* The basis for the choice of another jurisdiction's law must be reasonable and not merely a sham or subterfuge. *Id.* Finally, the parties' choice of another jurisdiction's law must not be 'contrary to "a fundamental policy" of a state having [a] "materially greater interest" and whose law would otherwise govern.' *Id.,* n. 2 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971)).

*Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.,* 131 S.W.3d 457, 475 (Tenn. Ct. App. 2003).

As to the first requirement, Delta Dawgs does not appear to contend the choice-of-law provision was executed in bad faith. In addressing the second requirement, Servpro argues

---

[1] Neither party argues the Court should disregard Tennessee's conflicts of laws provisions based on the language of Section 13.10 of the Franchise Agreement.

Tennessee bears a material connection to the transaction because its principal place of business is in Gallatin, Tennessee, and franchisees, including Delta Dawgs, attend training at the corporate headquarters there and make payments to Servpro in Tennessee. Delta Dawgs does not dispute these connections, but instead argues that California's compelling interest in consumer protection, as evidenced by its comprehensive statutes in the area, demonstrates its greater interest in litigating disputes governing franchise relationships.

The Sixth Circuit addressed a similar argument in *Banek v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 362 (6th Cir. 1993), in considering whether a Michigan district court should enforce a choice-of-law clause designating Georgia law apply to the parties' contract. The *Banek* Court explained that recognizing Michigan's "comprehensive and paternalistic franchise investment law" as representing the state's public policy "does not end the inquiry." *Id.* "The more central question," the court explained, "is whether the parties have selected, through their choice-of-law provision, a jurisdiction [Georgia] in which there is a substantial erosion of the quality of protection that the [Michigan franchise law] would otherwise provide." *Id.* Because the plaintiff failed to show application of Georgia law would violate a specific fundamental policy of Michigan, the court upheld the choice-of-law provision. *Id.*, at 363 ("It is not sufficient for plaintiff to simply assert that Michigan law should apply 'merely because a different result would be reached under' Georgia law.")

Delta Dawgs' brief is wholly devoid of any discussion of Tennessee law governing franchise relationships. Therefore, Delta Dawgs has failed to demonstrate Tennessee law is "contrary to a fundamental policy of a state having a materially greater interest." Nor has Delta Dawgs established that Tennessee has "no material connection" to the transaction, or that the parties' selection of Tennessee law was unreasonable and a sham. Accordingly, the Court concludes the choice-of-law provision in the Franchise Agreement is enforceable.

Given the Court's conclusion, Delta Dawgs' first counterclaim may not be maintained as a stand-alone claim based on California law. Delta Dawgs contends, however, that the parties incorporated the CFRA through the "California Addendum" to the Franchise Agreement, which provides, in part, as follows:

> This Addendum to Franchise License Agreement is made in recognition of the requirements of the California Business and Professions Code Sections 20000 to 20043. The parties to the attached Servpro Industries, Inc. Franchise License Agreement (the 'Agreement') agree as follows:
>
> 1. Section 1.2, Renewal, and Section 10, Default and Termination, are amended by adding: California Business and Professions Code Sections 20000 to 20043 provide rights to OPERATOR concerning termination or non-renewal of a Franchise and further provide if the Agreement is inconsistent with California law, California law will control.

(Doc. No. 1-1, at 43).[2]

To the extent Delta Dawgs can establish CFRA Sections 20020, 20035, and 20040.5 were incorporated into the Franchise Agreement through Paragraph 1 of the Addendum (presumably by showing the agreement is inconsistent with those provisions), however, any failure to comply with those provisions would be considered as part of a breach of contract claim. Servpro has not moved to dismiss Delta Dawgs' breach of contract counterclaim, and therefore, whether these CFRA Sections have been incorporated into the Agreement is not before the Court at this time.

Through the second counterclaim, brought as a class action, Delta Dawgs alleged the Franchise Agreement's forum selection clause is void.[3] In response to Servpro's Motion, Delta Dawgs withdrew the class action counterclaim (Doc. No. 90, at 7), and subsequently agreed to

---

[2] To the extent Delta Dawgs contends the introductory language of the Addendum reflects the parties' intent to abandon the Tennessee choice-of-law provision altogether, the Court is not persuaded the language of the entire Addendum, including the reiteration of the choice of Tennessee law in Paragraph 6, as set forth above, evidences such an intent.

[3] This Court ruled to the contrary in a previous Order (Doc. No. 44).

5

dismiss the counterclaim (Doc. No. 99). Thus, the Court need not address Servpro's arguments regarding the counterclaim.

Servpro next seeks to dismiss Delta Dawgs' fourth counterclaim, alleging "Breach of the Implied Covenant of Good Faith and Fair Dealing" (Doc. No. 83, at 25). Servpro argues Tennessee law does not recognize a stand-alone cause of action for breach of the implied covenant of good faith and fair dealing. Delta Dawgs argues the counterclaim is "a tort" brought under California law, but also states it is implied in every contract in California and is derivative of the breach of contract claim. (Doc. No. 90).

The Court has determined the Tennessee choice-of-law clause is enforceable, and therefore, applies Tennessee law to the issue of whether Delta Dawgs may maintain a stand-alone claim for breach of the implied covenant of good faith and fair dealing. Under Tennessee law, a claim based on the implied covenant of good faith and fair dealing is not a stand-alone claim; "rather it is part of an overall breach of contract claim." *Cadence Bank, N.A. v. The Alpha Tr.,* 473 S.W.3d 756, 773 (Tenn. Ct. App. 2015); *see also Jones v. LeMoyne-Owen Coll.,* 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009) ("[A] claim based on the implied covenant of good faith and fair dealing is not a stand alone claim; rather, it is part of an overall breach of contract claim.") Accordingly, Delta Dawgs' counterclaim for breach of the implied covenant of good faith and fair dealing is dismissed as a stand-alone claim.

Servpro argues Delta Dawgs' fifth counterclaim, for violation of Section 496 of the California Penal Code (Receiving Stolen Property), should be dismissed based on the Tennessee choice-of-law clause. Delta Dawgs incorporates its arguments outlined above as to why Tennessee law should not apply. The choice-of-law clause of the Franchise Agreement purports to govern "the rights granted and the relationship created hereunder. . ." Delta Dawgs does not argue that this language is limited to claims for breach of the Agreement itself. *Cf. Moses v.*

*Business Card Express, Inc.,* 929 F.2d 1131, 1139 (6th Cir. 1991) (concluding choice-of-law provision stating, "[t]his Franchise and License Agreement and the construction thereof shall be governed by the laws of the state of Michigan," was sufficiently broad to cover fraud and misrepresentation claims); *see also Banek,* 6 F.3d at 363. Therefore, because the Court has determined the Tennessee choice-of-law clause to be enforceable, the counterclaim based on the California Penal Code is not cognizable and is dismissed.

In the sixth counterclaim, Tammy Woloski, individually, alleges Servpro (and Conner) violated 42 U.S.C. § 1981 by intentionally discriminating against Delta Dawgs during the parties' business relationship. Servpro argues this counterclaim should be dismissed because Ms. Woloski has failed to allege she was treated differently than similarly-situated persons outside the protected class. Ms. Woloski argues she sufficiently alleged the elements of a Section 1981 claim.

The Sixth Circuit has set forth the elements of a Section 1981 claim, in a non-employment context, as follows:

> (1) plaintiff is a member of a protected class; (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Briscoe v. Jackson,* 285 Fed. Appx. 205, 208 (6th Cir. 2008). Although Servpro recites these elements in its brief, it does not acknowledge that the third element is stated in the alternative – a plaintiff may *either* show he or she was deprived of services while similarly-situated persons outside the class were not, *or* he or she received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

As part of the counterclaim, Ms. Woloski alleges:

7

> 89. SERVPRO and Conner violated Counterclaimant Tammy Woloski and DDCC's ["Delta Dawgs Construction rights under section 1981 when they intentionally discriminated against DDCC in forcing DDCC to overpay for numerous SERVPRO equipment items, forcing DDCC to execute the Promissory Note to secure a loan for a SERVPRO work vehicle, purporting to grant an exception to the FLA's territorial policy, although DDCC already had an office location within its prescribed territory, wrongfully advising DDCC that it could return to the National Accounts Participation program after DDCC's decision to temporarily leave the program, and extorting DDCC for 'under the table' shakedown payments unrelated to DDCC's payment obligations under the FLA and Promissory Note by way of threats of termination.
>
> 90. Tammy Woloski's race and Asian ethnicity were at the heart of Counter Defendant's intentional decision to discriminate against DDCC.

(Doc. No. 83 ¶¶ 89, 90). Servpro does not address whether these allegations are sufficient to state a claim under the "markedly hostile" clause. Therefore, the motion to dismiss the Section 1981 claim is denied.

Servpro argues the seventh counterclaim, alleging violation of California Civil Code Section 51.8 (Discrimination; Franchisees), should be dismissed based on the Tennessee choice-of-law clause. Delta Dawgs incorporates its arguments outlined above as to why Tennessee law should not apply, but does not argue the clause is limited to claims for breach of the Agreement itself. Therefore, because the Court has determined the Tennessee choice-of-law clause to be enforceable, the counterclaim for violation of the California Civil Code is not cognizable and is dismissed.

Servpro next seeks dismissal of one of the remedies requested in Delta Dawgs' prayer for relief: ". . . treble damages pursuant to RICO." (Doc. No. 83, at 31). Servpro points out that the pleading does not include a counterclaim based on RICO, and that Delta Dawgs has already agreed to dismissal of the RICO claims alleged in a previous pleading. (Doc. No. 78). Delta Dawgs has not responded to this argument. As Delta Dawgs has not asserted a RICO counterclaim, the prayer for relief based on RICO is dismissed.

Finally, Servpro seeks to strike the assertion by Delta Dawgs that this Court lacks personal jurisdiction over the defendants. (Doc. No. 83, at 7). Servpro argues the defendants have waived the objection to personal jurisdiction by failing to raise it in a previously-filed Rule 12 motion. Delta Dawgs argues it has only waived the right to raise the defense in a Rule 12 motion, but may still raise it at a later time through a Rule 56 motion for summary judgment.

Rule 12 provides, in pertinent part, as follows:

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

>  (1) lack of subject-matter jurisdiction;
>
>  (2) lack of personal jurisdiction;
>
>  (3) improper venue;
>
>  (4) insufficient process;
>
>  (5) insufficient service of process;
>
>  (6) failure to state a claim upon which relief can be granted; and
>
>  (7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

\* \* \*

(g) Joining Motions.

> (1) Right to Join. A motion under this rule may be joined with any other motion allowed by this rule.
>
> (2) *Limitation on Further Motions. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.*

(h) Waiving and Preserving Certain Defenses.

> (1) *When Some Are Waived. A party waives any defense listed in Rule 12(b)(2)-(5) by:*
>
> *(A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or*
>
> (B) failing to either:
>
>   (i) make it by motion under this rule; or
>
>   (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.
>
> (2) When to Raise Others. Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:
>
>   (A) in any pleading allowed or ordered under Rule 7(a);
>
>   (B) by a motion under Rule 12(c); or
>
>   (C) at trial.
>
> (3) Lack of Subject-Matter Jurisdiction. If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12.

Fed. R. Civ. P. 12 (emphasis added).

Delta Dawgs filed a Motion to Dismiss (Doc. No. 23) in this case on March 13, 2018. Through the Motion, the defendants argued this case should be dismissed for improper venue based on Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1391, or alternatively, transferred to the Central District of California based on 28 U.S.C. § 1404(a). The Motion did not challenge personal jurisdiction. After the Court issued an Order (Doc. No. 44) denying the Motion, the defendants filed an Answer (Doc. No. 48). The Answer failed to raise a personal jurisdiction defense.

Under operation of Rule 12(h)(1)(A) and (g)(2), a party waives the defense of lack of personal jurisdiction under (b)(2) by omitting it from its first motion to dismiss. *See Boulger v. Woods,* 306 F.Supp.3d 985, 995 (S.D. Ohio 2018) ("In sum, 'failure to include an available

personal jurisdiction defense in a party's first Rule 12 motion, whether a Rule 12(b) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, waives the defense.'"); *Mississippi ex rel. Hood v. Entergy Mississippi, Inc.,* 2017 WL 2973998, at *2 (S.D. Miss. July 11, 2017) (same). Delta Dawgs has not cited any authority for the argument that the personal jurisdiction defense is waived only for purposes of a Rule 12 motion, but not for a Rule 56 motion. Therefore, the personal jurisdiction defense raised in connection with the counterclaims (Doc. No. 83, at 7) is considered waived.[4]

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[4] Even if the personal jurisdiction defense had not been waived by Delta Dawgs, the Court notes that a previous Order described a consent-to-jurisdiction clause included in the Franchise Agreement. (Doc. No. 44, at 5). The Order also described evidence indicating that, as part of the franchise relationship, the individual defendants attended a two-week training course offered by Servpro in Gallatin, Tennessee; communicated with Servpro management and other personnel in Gallatin; and made loan repayments, and payments of fees and royalties, on a monthly basis to Servpro in Gallatin. (*Id.,* at 3).